# In the United States Court of Federal Claims

No. 19-883C
(Filed: January 14, 2020)

|  |  |  |
|---|---|---|
| RAYTHEON COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Keywords: Motion to Dismiss; Subject-Matter Jurisdiction; 28 U.S.C. § 1491(a)(2); Contract Disputes Act; 10 U.S.C. § 2321; DFARS; Proprietary Information; Vendor List; Technical Data; Government Purpose Rights |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

*Steven M. Masiello*, Dentons US LLP, Denver, CO, for Plaintiff. *Gale R. Monahan*, Dentons US LLP, Denver, CO, Of Counsel.

*Domenique Kirchner*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant, with whom were *Patricia M. McCarthy*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Joseph H. Hunt*, Assistant Attorney General.

## OPINION AND ORDER

**KAPLAN, Judge.**

Plaintiff Raytheon Company ("Raytheon") has a contract with the United States Army Contracting Command – Redstone ("the Army") to supply engineering services that support the Patriot weapon system. This case involves a dispute regarding the restrictive markings Raytheon placed on certain vendor lists it was contractually obligated to supply to the Army. An Army contracting officer issued a final decision directing Raytheon to remove the proprietary marks it had placed on the lists and to replace them with the legend used for technical data in which the government holds "government purpose rights" under applicable regulations. See Department of Defense Federal Acquisition Regulation Supplement ("DFARS") 252.227-7013(b)(2), (h)(2).

In this suit, Raytheon seeks declarations: 1) that the contracting officer's final decision directing Raytheon to affix the government purpose rights ("GPR") legend to its lists is invalid because Raytheon was denied certain procedural protections guaranteed by 10 U.S.C. § 2321 (Count I); 2) that the Army breached the contract by failing to follow procedures for challenging restrictive markings set forth in DFARS 252.227-7037, which is incorporated into the contract (Count II); 3) that Raytheon's vendor lists are not technical data as defined in DFARS 252.227-

7013(a)(15) (Count III); 4) that the Army breached the contract by treating the vendor lists as technical data (Count IV); and 5) that even if the vendor lists are properly classified as technical data, the Army is entitled to only "limited rights" to the lists, rather than "government purpose rights" (Count V). See Compl. at 16–23, ECF No. 1.

The case is currently before the Court on the government's motion to dismiss Count I of the complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") or, alternatively, for failure to state a claim under RCFC 12(b)(6). In addition, the government notes its objections to passages in Raytheon's complaint which request that the Court declare the contracting officer's final decision "invalid" or "void." For the reasons set forth below, the government's motion is **DENIED**.

## BACKGROUND

**I.    Legal Framework**

Pursuant to 10 U.S.C. § 2320(a)(1), the Secretary of Defense is directed to "prescribe regulations to define the legitimate interest of the United States and of a contractor or subcontractor in technical data pertaining to an item or process."[1] Under § 2320, and its implementing regulations, where an item or process is developed exclusively with federal funds, the United States is given "the unlimited right to [] use technical data pertaining to the item or process [or] release or disclose the technical data to persons outside the government or permit the use of the technical data by such persons." 10 U.S.C. § 2320(a)(2)(A). On the other hand, "in the case of an item or process that is developed by a contractor or subcontractor exclusively at private expense," the statute and regulations provide that "the contractor or subcontractor may restrict the right of the United States to release or disclose technical data pertaining to the item or process to persons outside the government, or permit the use of the technical data by such persons." Id. § 2320(a)(2)(B). Finally, where the item or process is developed in part with federal funds and in part at private expense:

> [T]he respective rights of the United States and of the contractor or subcontractor in technical data . . . shall be established as early in the acquisition process as practicable (preferably during contract negotiations) and shall be based on negotiations between the United States and the contractor, except in any case in which the Secretary of Defense determines, on the basis of criteria established in the regulations, that negotiations would not be practicable.

Id. § 2320(a)(2)(E).

The other statutory provision relevant to this litigation, and upon which Count I is predicated, is 10 U.S.C. § 2321. It establishes procedures for validating proprietary data

---

[1] "Technical data" is defined by regulation as "recorded information, regardless of the form or method of the recording, of a scientific or technical nature (including computer software documentation)." DFARS 252.227-7013(a)(15). "The term does not include . . . data incidental to contract administration, such as financial and/or management information." Id.

restrictions for "any contract for supplies or services entered into by the Department of Defense that includes provisions for the delivery of technical data." See 10 U.S.C. § 2321(a). Section 2321 directs that contracts must include a provision stating that a contractor shall be prepared to furnish to the contracting officer a written justification for any "use or release restriction" on technical data asserted by the contractor or subcontractor. Id. § 2321(b). It further provides that the Secretary of Defense may challenge such restrictions if he finds that "reasonable grounds exist to question the current validity of the asserted restriction; and [] the continued adherence by the United States to the asserted restriction would make it impracticable to procure the item to which the technical data pertain competitively at a later time." Id. § 2321(d)(1).

Under the statute, the Secretary must provide written notice which "state[s] the specific grounds for challenging the asserted restriction." Id. § 2321(d)(3)(A). A contractor is given sixty days to justify the "validity of the asserted restriction." Id. § 2321(d)(3)(B). Thereafter, "the contracting officer shall, within 60 days of receipt of any justification submitted, issue a decision or notify the party asserting the restriction of the time within which a decision will be issued." Id. § 2321(g)(2). These procedures for challenging the restrictive markings a contractor affixes to technical data are mirrored in the procedures set forth at DFARS 252.227-7037(d)–(g).

## II.   Background of Plaintiff's Claims[2]

The Army and Raytheon are currently parties to a follow-on contract to provide engineering services in support of the Patriot weapons system (Contract No. W31P4Q-14-C-0097). That contract was awarded to Raytheon on August 15, 2014. Compl. ¶ 23. Like the initial engineering services contract (Contract No. W31P4Q-09-C-0057) and consistent with DI-MGMT-80894A, the follow-on contract requires Raytheon to submit to the Army a listing of all the sources it used to procure subcontracted items in support of the Patriot Missile system "as a means for the Government to track parts selection, supplier qualifications, and identification of parts." Id. ¶¶ 4, 22, 85.

Raytheon submitted vendor lists to the Army under the initial contract on July 16, 2013 and July 17, 2014 and under the follow-on contract on February 20, 2015. Id. ¶ 36, 38. Each of these lists contained proprietary markings and export control warnings. Id. The February 20, 2015 vendor list, for example, bore the following legend:

> Distribution Statement E: Distribution authorized to DoD Components only, Proprietary Information, 01/07/2015. Other requests shall be referred to [sic] Project Manager, PEO Missiles and Space, ATTN: SFAE-MSLS-LT-PC, Bldg 5250, Martin Road, Redstone Arsenal, AL 35898-8000.
>
> WARNING – This document contains technical data whose export is restricted by the Arms Export Control Act (Title 22, U.S.C. Sec 2751, et seq) or the Export Administration Act of 1979, as amended, Title 50, U.S.C., App. 2401 et seq.

---

[2] The facts set forth below are drawn from the complaint and are presumed to be true for purposes of the government's motion to dismiss.

>Violations of these export laws are subject to severe criminal penalties. Disseminate in accordance with provisions of DoD Directive 5230.25.

Id. ¶ 38.

Raytheon submitted another vendor list on June 9, 2015. Id. ¶ 40. This list contained the same legend as the February list. Id. Notwithstanding that it had previously raised no objection to the legend, the Army challenged its validity in a July 13, 2015 letter to Raytheon. Id. ¶¶ 40–41. Raytheon responded by letter of August 20, 2015. Id. ¶ 42. It asserted that the vendor lists were "management" data under DI-MGMT-80894A, and not "technical" data as defined by DFARS 252.227-7013, and that it intended to modify the legends it placed on its vendor lists to reflect that view. Id.

Raytheon effected its stated intent when submitting vendor lists in August and November of 2016. It deleted the Distribution Statement E legend and the export control warnings placed on previous lists and substituted the following:

>RAYTHEON COMPANY PROPRIETARY DATA
>
>Information contained herein is proprietary to Raytheon Company, is submitted in confidence, and is privileged and exempt from disclosure by the U.S. Government under paragraph (b) of the Freedom of Information Act (5 USC 552) and subject to 18 USC 1905.

Id.

On September 20, 2016, the Army challenged Raytheon's use of this legend on the grounds that the information contained in the lists was technical, not management data. Id. ¶ 44. The Army explained that Raytheon had included the same information on various drawings without restriction, and that Government employees needed the information contained in the vendor lists to fulfill other government contracts. Id. The Army instructed Raytheon to remove the proprietary data legend within sixty days and resubmit the list. Id. In a November 9, 2016 letter, Raytheon declined to comply with this directive on the grounds that "it was under no obligation to diminish its competitive advantage by making its Vendor Lists available to its competitors." Id. ¶ 45.

On March 2, 2017, the Army again objected to the markings on Raytheon's vendor list and instructed Raytheon to remove them. Id. ¶ 46. The Army warned that if Raytheon did not comply, it would remove the legends at Raytheon's expense, reject future submissions, and withhold 10% of the total contract price until Raytheon submitted vendor lists with the proper markings. Id.

More than a year later, on June 21, 2018, the contracting officer ("CO") issued a contracting officer's final decision regarding Raytheon's November 9, 2016 justification of its proprietary legend. Id. ¶ 47. In her decision, the CO asserted that Raytheon's vendor lists qualified as technical data. Id. She explained that the vendor list contained a list of technical parts, part numbers, and sources and were "used in conjunction with other technical data (such as

4

technical drawings) to maintain essential Army systems and databases." Def.'s Mot. to Dismiss Parts of the Compl. App. at 4, ECF No. 8-1.

In addition to instructing Raytheon to remove the nonconforming markings, the CO also directed that within ninety days Raytheon must replace its proprietary legend with the GPR legend that is set forth at DFARS 252.227-7013(f)(2). Id. at 6. The CO also warned that she would disapprove all future submissions that did not bear the GPR legend and that she reserved the right to withhold 10% of the total contract price until Raytheon came into compliance. Id.

### III.   The Present Action

Raytheon filed the present complaint in this court on June 17, 2019. ECF No. 1. As noted above, Raytheon requests that the Court issue declaratory judgments regarding the Army's compliance with the procedural rights specified in 10 U.S.C. § 2321 and with various contractual provisions that incorporate by reference the relevant regulations at DFARS 252.227-7013, 7037.

On September 16, 2019, the government moved to dismiss Raytheon's claim regarding violations of 10 U.S.C. § 2321 (Count I) for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim. See generally Def.'s Mot. to Dismiss Parts of the Compl. ("Def.'s Mot."), ECF No. 8. Raytheon filed its response to the government's motion on October 14, 2019, to which the government replied on October 22, 2019. ECF Nos. 9, 10. Thereafter, the Court issued an order directing the parties to submit supplemental briefs addressing the application of the decision of the United States Court of Appeals for the Federal Circuit in Todd Construction, L.P. v. United States, 656 F.3d 1306 (Fed. Cir. 2011). ECF No. 14. The parties timely submitted their supplemental briefs on December 6, 2019 and oral argument was held on December 18, 2019. ECF Nos. 17, 18, 21

### DISCUSSION

As noted, the government has moved to dismiss Count I of the complaint under RCFC 12(b)(1) for lack of subject-matter jurisdiction. According to the government, the Court lacks jurisdiction over this claim because under the Tucker Act, 28 U.S.C. § 1491(a)(1), it may only exercise jurisdiction over claims based on a statute where a plaintiff seeks monetary relief. Def.'s Mot. at 4 (citing Doe v. United States, 372 F.3d 1308, 1312 (Fed Cir. 2004)); see also Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716–17 (Fed. Cir. 1998) (stating that the Court of Federal Claims lacks jurisdiction to issue declaratory judgments that are unrelated to any money claim pending before it). Raytheon, of course, does not seek an award of money damages in this case. Instead it requests declaratory relief with respect to the alleged violation of the statutory procedures set forth at 10 U.S.C. § 2321 and asks the Court to declare the CO's decision void or invalid based on that violation.

The Court agrees with the government that Count I is not within the jurisdiction conferred by 28 U.S.C. § 1491(a)(1) because Raytheon does not seek money damages for the alleged statutory violation. The government's motion to dismiss for lack of subject-matter jurisdiction is nonetheless without merit because the request for declaratory relief in Count I falls within this Court's jurisdiction under the Contract Disputes Act (the "CDA"), 41 U.S.C. §§ 7101–09. See 28 U.S.C. § 1491(a)(2) (stating that the Court of Federal Claims "shall have

5

jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41"). The claims covered by this grant of jurisdiction include disputes "concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of th[e CDA]." 28 U.S.C. § 1491(a)(2) (emphasis supplied).

The CDA does not contain its own definition of the word "claim." The court of appeals has therefore held applicable the definition of the term that appears in the Federal Acquisition Regulations ("FAR"). Todd Constr., 656 F.3d at 1311 (citing H.L. Smith, Inc. v. Dalton, 49 F.3d 1563, 1564–65 (Fed. Cir. 1995)). Under FAR 2.101, a "claim" is "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." Id. (emphasis supplied). A claim "relat[es] to the contract" for purposes of establishing jurisdiction under 28 U.S.C. § 1491(a)(2) if it has "some relationship to the terms or performance of a government contract." Id. at 1312 (citing Applied Cos. v. United States, 144 F.3d 1470, 1478 (Fed. Cir. 1998)). A claim covered by the CDA "need not be based on the contract itself (or a regulation that can be read into the contract) as long as it relates to its performance under the contract." Id. at 1314.

Applying these standards, the CO's decision that the vendor lists contained technical data and her direction to Raytheon requiring it to affix GPR marks to those lists resolved a "claim" for purposes of conferring jurisdiction on the Court pursuant to the CDA. See Cubic Def. Applications, Inc., ASBCA No. 58519, 18-1 BCA ¶ 37,049 (holding that "the contractor's response to the CO's challenge [to the validity of its restrictive markings] is considered a 'claim' under the CDA"); Alenia N. Am., Inc., ASBCA No. 57935, 13 BCA ¶ 35,296 (noting that the government's direction to remove restrictive markings from data "would certainly be something 'related to' the performance of th[e] contract"); see also Garrett v. Gen. Elec. Co., 987 F.2d 747, 749 (Fed. Cir. 1993) (holding that a Navy directive requiring a contractor to correct or replace defective engines constituted "other relief" within the FAR's third category of "claims"). Indeed, the government concedes that a challenge that involves the validity of a contractor's restrictive markings is a claim under the CDA. See Def.'s Resp. to Nov. 26, 2019 Ct. Order at 3, ECF No. 17. And it does not dispute that the CO issued a decision on that claim as required to confer jurisdiction on this Court under 28 U.S.C. § 1491(a)(2).

Nonetheless, the government contends that the Court lacks jurisdiction over Count I of Raytheon's complaint because in Count I Raytheon "does not seek a determination of whether the government is entitled to a GPR license in the Vendor Lists, or whether Raytheon must deliver the Vendor Lists with GPR markings." Id. Instead, the government argues, "Count I is solely that the contracting officer's final decision should be declared to be 'invalid' and 'void' because the Army did not follow the procedures in subsections (d) and (g) of 10 U.S.C. § 2321 before issuing it." Id.

The Court disagrees with the government's characterization of Count I as not presenting a challenge to the government's claimed right to have the vendor lists delivered with GPR markings. To the contrary, the Court understands that the gravamen of Count I is that Raytheon cannot be compelled to deliver the vendor lists with GPR markings because the CO denied

6

Raytheon the procedural protections mandated by statute. Specifically, Raytheon contends that once the CO concluded that the lists contained technical data, the statute required her to give Raytheon the opportunity to assert and justify the use of restrictive markings of its own choice, including a "limited rights" legend. Whether or not that contention has merit, it certainly seeks a determination whether Raytheon can be compelled to affix the GPR legend to its vendor lists as the CO directed. For these reasons, the Court rejects the government's contention that it lacks jurisdiction to consider Raytheon's claim that the CO's directive was invalid because she failed to follow the statutory procedures governing challenges to restrictive markings.

The Court also rejects the government's arguments regarding the Court's authority to include language in any judgment it might enter which declares that the CO's decision is "invalid" or "null and void." See Def.'s Mot. at 2. The question of whether any procedural violations were committed by the CO and whether such violations prejudiced Raytheon remains to be decided. The Court declines to address the scope of any declaratory relief it might provide in the context of the government's motion to dismiss.

Finally, in addition to its jurisdictional argument, the government contends that Count I must be dismissed under RCFC 12(b)(6) because 10 U.S.C. § 2321 does not supply Raytheon with a private cause of action to enforce its requirements. But Count I of Raytheon's complaint does not assert a "'freestanding private right of action to enforce' the provisions of 10 U.S.C. § 2321" as the government argues. Id. at 16 (quoting Alexander v. Sandoval, 532 U.S. 275, 290–91 (2001)). Instead, it asserts a violation of § 2321 as the basis for its claim under the CDA that the government lacked the legal authority to direct it to affix GPR markings to its vendor lists. Cf. Cessna Aircraft Co. v. Dalton, 126 F.3d 1442, 1447 (Fed. Cir. 1997) (finding that a contractor pursuing a CDA claim based on an implied-in-fact contract has standing to raise the agency's non-compliance with the Anti-Deficiency Act to show that it never lawfully exercised its option to extend a written contract). The government's contention that Count I should be dismissed for failure to state a claim is therefore without merit.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim is **DENIED**. Raytheon's motion to strike the government's notice of an additional exhibit, ECF No. 23, is **DENIED**. The parties shall submit a joint preliminary status report by **Tuesday, February 4, 2020**.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge