# In the United States Court of Federal Claims

No. 19-883C
(Filed: November 4, 2020)

| | |
|---|---|
| RAYTHEON COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) <br> ) <br> ) <br> ) | Keywords: Motion to Compel; Protective Order; Request for Production; RCFC 26(b)(1); Defense Contract Audit Agency. |

*Steven M. Masiello*, Dentons US LLP, Denver, CO, for Plaintiff. *Gale R. Monahan*, Dentons US LLP, Denver, CO, Of Counsel.

*Domenique Kirchner*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant, with whom were *Patricia M. McCarthy*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Jeffrey Bossert Clark*, Acting Assistant Attorney General.

## OPINION AND ORDER

**KAPLAN, Judge.**

This breach of contract case is currently before the Court on plaintiff's motion for a protective order, ECF No. 37, and the government's motions to compel responses to its first and second set of discovery requests, ECF Nos. 42, 45. For the reasons set forth below, Raytheon's motion for a protective order is **DENIED** and the government's motions to compel are **GRANTED.**

## BACKGROUND

Plaintiff Raytheon Company ("Raytheon") and the United States Army Contracting Command-Redstone ("the Army") are parties to a series of contracts for engineering services in support of the Patriot weapon system. Compl. ¶ 2, ECF No. 1. This case arose out of a dispute between them concerning the restrictive markings that Raytheon placed on vendor lists it was

contractually obligated to supply to the Army under the 2009 and 2014 Contracts. Id. ¶¶ 4, 22, 85.[1]

A detailed discussion of the background of the dispute is set forth in this Court's January 14, 2020 opinion denying the government's motion to dismiss Count I of the complaint. ECF No. 25. As described therein, the dispute culminated in a June 21, 2018 contracting officer's final decision ("COFD") in which the contracting officer found that the restrictive markings Raytheon had affixed to the vendor lists were improper. Id. at 3–5. Specifically, the CO concluded: 1) that the vendor lists constituted "technical" data for purposes of Department of Defense Federal Acquisition Regulation Supplement ("DFARS") 48 C.F.R. § 252.227-7013; 2) that the government held "government purpose rights" licenses for the data; and 3) that Raytheon must replace the proprietary markings it had placed on the vendor lists with the legend for government purpose rights prescribed by DoD regulations. Id. at 4–5; see DFARS § 252.227-7013(b)(2), (h)(2).

Raytheon challenges the COFD on several grounds including, as relevant to the discovery disputes currently before the Court, an argument that even if the vendor lists are "technical" data, the Army is entitled to only "limited rights" to the data because Raytheon allegedly developed the lists entirely at its own expense. Compl. ¶ 5; see 10 U.S.C. § 2320(a)(2)(B) (providing—with exceptions not relevant here—that where "an item or process . . . is developed by a contractor . . . exclusively at private expense, the contractor . . . may restrict the right of the United States to release or disclose technical data pertaining to the item or process to persons outside the government, or permit the use of the technical data by such persons"); see also DFARS 252.227-7013(a)(8) ("Developed exclusively at private expense means development was accomplished entirely with costs charged to indirect cost pools, costs not allocated to a government contract, or any combination thereof.").

On February 3, 2020, a few weeks after the Court denied the government's motion to dismiss, the Defense Contract Audit Agency ("DCAA") emailed Raytheon to notify it that the Army had asked DCAA "to look into how the costs are being charged for the development" of the vendor lists under four contracts, including the 2009, 2014, and 2017 Contracts. Pl.'s Mot. for Protective Order ("Pl.'s Mot.") Ex. 1, at 3, ECF No. 37-1. "To get started," DCAA requested that Raytheon "provide a walk-through to demonstrate how these costs are identified and accumulated in the accounting system (to include identifying cost centers, NWAs, etc.) and how they are charged to the Government." Id. Raytheon responded in an email of February 13, 2020 in which it "respectfully decline[d] to participate [in the audit] so that this matter can be handled through the litigation process." Id. at 2.

---

[1] The relevant contracts for purposes of the pending motions are Contract No. W31P4Q-09-C-0057 (the "2009 Contract"), Contract No. W31P4Q-14-C-0093 (the "2014 Contract"), and Contract No. W31P4Q-17-C-0073 (the "2017 Contract"). Each provides that Raytheon must provide the Army a list of all sources from which it procured subcontracted items pursuant to Source/ Vendor/ Foreign Lists in accordance with DI-MGMT-80894A. Def.'s First Mot. to Compel at 3–4, ECF No. 42.

More than five months later, on July 30, 2020, DCAA sent Raytheon a letter which it dubbed a "Formal Request for Access to Records Pertaining to Audit of Integrated Defense Systems (IDS) Costs Incurred to Prepare Source Vendor Listings on PATRIOT Engineering Services Contracts." Pl.'s Mot. Ex. 5, at 2–3, ECF No. 37-5. In the letter, DCAA stated that it had decided that it could not proceed with an audit without access to the information it had requested in the February 3 email. Id. at 2. It further stated that the letter represented DCAA's "final request for this information." Id. at 3.

Raytheon responded by letter of August 7, 2020. App. to Def.'s Resp. to Pl.'s Mot. ("App. to Def.'s Resp.") at 21–23, ECF No. 38-1. In that letter, Raytheon posed a series of objections to DCAA's authority to compel it to have its personnel participate in a "walk-through" and, more generally, to whether DCAA had the authority to conduct any audit at all concerning the costs it incurred to develop its vendor lists. Id. at 22. Further, Raytheon advised that "to the extent that DCAA requires records relating to the 2009 Contract and 2014 Contract to support the Government's positions in the pending litigation pursuant to FAR § 52.215-2(f)(2), these records have been requested by DOJ in the pending litigation through the litigation discovery process and are subject to the Rules and supervision of the Court." Id.

On August 17, 2020, Raytheon filed the motion for a protective order that is currently before the Court. In it, Raytheon requests that the Court issue an order "to preclude the United States . . . from obtaining documents and information from Raytheon outside of the discovery process in this litigation"—i.e., through the DCAA audit. Pl.'s Mot. at 1. It also asks the Court to intervene to prevent DCAA from "interviewing Raytheon's employees regarding such documents and information outside of the discovery process." Id. at 3.

Ten days after Raytheon filed its motion for a protective order, DCAA responded by letter of August 27, 2020 to Raytheon's letter of August 7, 2020. App. to Def.'s Resp. at 26–28. DCAA explained that its request for a walk-through was routine and was intended to get Raytheon's input so that it could tailor its document requests. Id. at 27. It assured Raytheon that it did not request the walk-through so that it could interview witnesses without counsel present and that, in fact, counsel regularly participate in DCAA walk-throughs. Id. Given that Raytheon had declined to allow a walk-through, DCAA stated, it had identified categories of accounting records whose production it requested. Id. at 27–28. DCAA advised Raytheon that failure to comply with its request by September 11, 2020 would be considered a formal denial of access to records which would be "reported to appropriate government personnel," all the way up to the Director of DCAA, who has statutory authority to issue a subpoena. Id. at 28; see 10 U.S.C. § 2313(b)(1).

In the meantime, shortly after completion of the briefing on Raytheon's motion for a protective order, the government filed motions to compel Raytheon to respond to its first and second sets of interrogatories and requests for production of documents. Def.'s 1st Mot. to Compel, ECF No. 42; Def.'s 2d Mot. to Compel, ECF No. 45. Both motions sought orders compelling Raytheon to provide information and documents regarding the costs of assembling the vendor lists it supplied to the Army under the 2017 Contract. Def.'s 1st Mot. to Compel at 5–6; Def.'s 2d Mot. to Compel at 2. Raytheon has objected to the interrogatories and document requests that relate to the 2017 Contract because, in its view, the June 21, 2018 COFD covered

only claims concerning the lists supplied under the 2009 and 2014 Contracts. Pl.'s Resp. in Opp'n to Def.'s 1st Mot. to Compel ("Pl.'s Resp.") at 2, ECF No. 44.

On September 11, 2020, Raytheon responded to DCAA's August 27 letter. ECF No. 43-1. In its response, Raytheon referenced the government's motion to compel (which had been filed three days earlier). It observed that, if the motion were granted, and if the government was provided access to the records related to the 2017 Contract, DCAA's requests for information to conduct its audit would be rendered "moot." Id. Raytheon therefore asked DCAA to delay any further action concerning the audit until after the Court ruled on the government's motions to compel. Id.

Briefing on all motions is now complete. On October 22, 2020 the Court heard oral argument on the motions. At the close of oral argument, the Court advised the parties that it intended to deny Raytheon's motion for a protective order and grant the government's motions to compel, and that it would issue an opinion to that effect in short order.

## DISCUSSION

### I.  Motion for Protective Order

Rule 26(c)(1) of the Rules of the Court of Federal Claims ("RCFC") states that "[t]he court may, for good cause, issue an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense." The movant has the burden of demonstrating good cause. Forest Prods. N.W., Inc. v. United States, 453 F.3d 1355, 1361 (Fed. Cir. 2006). Further, "broad allegations of harm, unsubstantiated by specific examples, are insufficient." Lakeland Partners, L.L.C. v. United States, 88 Fed. Cl. 124, 133 (2009).

In this case, Raytheon contends that it "should not be subject to the burden and expense of responding to the Government's discovery requests, and a parallel DCAA investigation, separate and apart from the discovery process and without the benefit of any oversight by the Court or the attorneys managing this litigation." Pl.'s Mot. at 2. It further argues, on several bases, that DCAA lacks the authority to conduct an audit regarding the costs of developing the vendor lists under the relevant contracts. Id. at 9–12.

The Court begins by observing that Raytheon's motion does not, on its face, ask the Court to intervene to protect it from an oppressive or unduly burdensome discovery request. Instead, it asks the Court to impose limitations on a DCAA audit that DCAA is empowered to conduct under an independent grant of statutory authority. Id. at 6–7. Generally, of course, the Court of Federal Claims "cannot entertain claims for injunctive relief or specific performance, except in narrowly defined, statutorily provided circumstances." Kanemoto v. Reno, 41 F.3d 641, 645 (Fed. Cir. 1994). Injunctive relief is available only if it is "incident of and collateral to" a monetary judgment, 28 U.S.C. § 1491(a)(2), which means it is "tied and subordinate to a money judgment," James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998) (quoting Austin v. United States, 206 Ct. Cl. 719, 723 (1975)).

4

Raytheon alleges that the Court nonetheless has the power to limit the DCAA audit as part of its authority to supervise the discovery process. According to Raytheon, "DOJ clearly enlisted DCAA's audit and subpoena power to bypass the discovery process to obtain documents and information to support its claims and defenses and to subvert the discovery process's limitations and procedural safeguards." Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. at 7, ECF No. 41; cf. N. Star Alaska Hous. Corp. v. United States, 76 Fed. Cl. 158, 212 n.71 (2007) (stating that the court was "concerned with the prospect of defendant using an investigation to supplement its discovery in a case before this court, an act that seemingly constitutes abuse of both the investigative and discovery processes"). But it is hardly "clear" that something sinister is afoot here because, among other things, the DCAA audit will not provide the government with any advantage or information that it could not secure through discovery. Pl.'s Reply at 7.

First, because it is voluntary, the walk-through that DCAA has requested does not enable the government to circumvent limitations imposed by the discovery rules or the ethical obligations of attorneys which preclude ex parte interviews of an opposing party's witnesses. Further, DCAA has noted that it is routine for contractors to have counsel present during an entrance conference or walk-through. Def.'s Resp. to Pl.'s Mot. at 5, 15, ECF No. 38.

Second, as described below, the Court is granting the government's motion to compel responses to its first and second set of discovery requests regarding the vendor lists submitted under the 2017 Contract. It appears, therefore, that DCAA can obtain access to all of the records it seeks by requesting them from DOJ. This should avert any duplication of effort by Raytheon. Moreover, in its September 11, 2020 letter, Raytheon itself suggested that its motion for a protective order would become moot if the government's motions to compel were granted. See ECF No. 43-1. Raytheon's objections based on the burdens imposed by the DCAA audit therefore lack merit.

Finally, and in any event, Raytheon has not established that—absent the issuance of a protective order—it would suffer any harm. At this point, DCAA has not compelled Raytheon to do anything. To be sure, the Director of DCAA has the authority to issue a subpoena, 10 U.S.C. § 2313(b)(1), where there has been a "formal denial of access to records" that has been "reported to appropriate government personnel." DCAA Instruction No. 7640.17, Formal Reporting Procedures for Denial of Access to Contractor's Records ¶¶ 5.1.1, 6.4.1 (Dec. 19, 2008) (requiring the field audit office manager to prepare a formal denial of access report). Here, however, there is no evidence that this matter has been elevated to DCAA's Director, much less that he has or would approve the issuance of a subpoena. And even if the Director ultimately did so, Raytheon could either return to this Court to renew its request for a protective order or challenge the subpoena through a motion to quash in which it could raise the objections to DCAA's authority that it would have this Court consider.

For all of these reasons, Raytheon has not established the existence of good cause to grant its motion for a protective order. The motion must therefore be denied.

## II.   The Government's Motions to Compel

Pursuant to RCFC 26(b)(1), a party is entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

needs of the case." Raytheon contends that the government's motions to compel should be denied because the information and documents the government seeks—which concern the vendor lists submitted pursuant to the 2017 Contract—are not relevant to the claims before the Court. Pl.'s Resp. at 9. Specifically, Raytheon contends that the claims the COFD decided pertained only to the vendor lists supplied under the 2009 and 2014 Contracts, because those were the topics of Raytheon's November 9, 2016 letter, as the COFD itself confirms. Id. at 11.

The Court disagrees with Raytheon's reading of the COFD. In the Court's view, the COFD went beyond the claims that Raytheon made in its November 9, 2016 letter (which specifically challenged the agency's rejection of the restrictive markings on the lists submitted under the 2009 and 2014 contracts). App. to Def.'s 1st Mot. to Compel at 68, ECF No. 42-1. It also resolved government claims under the 2017 Contract—namely the claims that the vendor lists Raytheon submitted under the 2017 Contract were technical data and that the government held government purpose rights to that data. Id.; cf. Garrett v. Gen. Elec. Co., 987 F.2d 747, 749 (Fed. Cir. 1993) (COFD that required contractor to fix defective engines resolved a government claim). Indeed, the COFD expressly stated that it was "the final determination for this contract and all future contracts requiring delivery of Source/Vendor/Foreign Lists IAW DI-MGMT-80894A." App. to Def.'s 1st Mot. to Compel at 68. Further, the COFD explicitly warned that "[i]n the event the Government receives future data deliveries in response to DI-MGMT-80894A which still reflect the nonconforming markings, the data will be disapproved as 'deficient upon delivery,' and, as authorized by DFARS 252.227-7013(h)(2), the Government may remove, correct or ignore the markings." Id. at 72.

The Court is not persuaded by Raytheon's contention that the 2017 Contract is not a "future" contract within the meaning of the COFD because the 2017 Contract was already in existence as of the time that the COFD was issued. See Pl.'s Resp. at 11. While the use of the adjective "future" is not as precise as one might like, common sense and the surrounding context confirm that when the CO referenced "future contracts," the CO was referring to contracts entered after the 2009 and 2014 contracts which required vendor lists to be developed and delivered in accordance with DI-MGMT-80894A. App. to Def.'s 1st Mot. to Compel at 67–73 (COFD).

Thus, at the time the CO issued the final decision, the contracting officer representative ("COR") had found that several of the vendor lists submitted under the 2017 Contract contained the same "non-conforming technical data markings" as the lists Raytheon supplied under the earlier contracts. Id. at 63–66 (letters dated March 29, 2018). The COR "approved" the markings, but only "pending issuance of a Final Decision Letter from the Contracting Office regarding this matter"—i.e., pending the COFD that was ultimately issued several months later, on June 21, 2018. Id. It is therefore clear that it was the agency's intent to have the June 21, 2018 COFD address all pending submissions, including those submitted under the 2017 Contract. And, in the Court's view, the language of the COFD reflects that intent explicitly.

In short, the government's claims regarding the vendor lists submitted under the 2017 Contract are before the Court in this action. Therefore, the information and documents that the government has requested in its first and second set of discovery requests are relevant within the meaning of RCFC 26 and must be produced.

Finally, the Court notes that a party that successfully moves for an order compelling responses to its discovery requests is generally entitled to an award of expenses, including attorney's fees. See RCFC 37(a)(5)(A). There is an exception to this rule where "the opposing party's nondisclosure, response, or objection was substantially justified." Id. at 37(a)(5)(A)(ii). Here, Raytheon's objections to the government's discovery requests—while ultimately found without merit—were not unreasonable, given the ambiguity of some of the language in the COFD. Its objections to the government's discovery requests were therefore substantially justified and an award of expenses is not warranted. See Alexander v. FBI, 186 F.R.D. 144, 147 (D.D.C. 1999) ("The Supreme Court has stated that a party meets the 'substantially justified' standard when there is a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness of the motion.") (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)).

## CONCLUSION

Based on the foregoing:

1) Raytheon's motion for a protective order, ECF No. 37, is **DENIED**;

2) The government's motions to compel responses to its first and second sets of interrogatories and requests for production of documents, ECF Nos. 42, 45, are both **GRANTED;**

3) Raytheon shall provide amended responses to Defendant's First and Second Set of Interrogatories and Defendant's First and Second Set of Requests for Production of Documents;

4) By **November 12, 2020**, the parties shall jointly file a new proposed discovery schedule that includes a deadline for the production of the foregoing responses;

5) The parties' outstanding joint motion to amend the discovery schedule, ECF No. 50, is **DENIED** as moot.

**IT IS SO ORDERED.**

        s/ Elaine D. Kaplan
        ELAINE D. KAPLAN
        Judge